# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DORIS B.,**[1]

   **Plaintiff,**

            **Case No. 2:23-cv-3990**
  **v.**         **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

   **Defendant.**


## OPINION AND ORDER

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Doris B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On September 14, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since January 15, 2013. R. 240–47. The applications were denied initially and upon reconsideration. R. 148–53, 158–64. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 156–57. ALJ Scott Tirrell held a hearing on October 19, 2018, at which Plaintiff, who was represented by a non-attorney representative, testified, as did a vocational expert. R. 37–74 (reflecting further that an interpreter was also present at the hearing). In a decision dated March 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 15, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 19–32 ("the 2019 decision"). However, on appeal to this Court, the 2019 decision was reversed, and this Court remanded the action for further proceedings. R. 539–54 (remanding "for clarification of findings as to exertional limitations, and for a reassessment of the disabling effect, or not, of the claimant's impairments in combination" and stating further that "ALJ Tirrell's finding that the mental limitations were moderate to be supported by substantial evidence. On remand, however, it will be necessary to view and reweigh the evidence as a whole").

On remand, ALJ Ricardy Damille held another hearing on March 31, 2023, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 478–514 ("2023 hearing"). In a decision dated April 27, 2023, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from Plaintiff's alleged disability onset date of January 15, 2013, through the date of that decision. R. 458–72. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 9, 2024, Plaintiff

consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On January 29, 2025,

the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

4

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

6

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. R. 460. She was 40 years old on January 15, 2013, her alleged disability onset date. R. 470. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 460.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar radiculopathy; obesity; bilateral carpal tunnel syndrome ("CTS"); major depressive disorder; and panic disorder with agoraphobia. *Id*.  The ALJ also found that the following

medically determinable impairments were not severe: gastritis; hypertension; diabetes mellitus; vitamin B deficiency; vitamin D deficiency; and hyperlipidemia. R. 461.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 461–64.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 464–70. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a personnel scheduler and a human resources clerk. R. 470.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a price marker, a router, and a mail clerk—existed in the national economy and could be performed by Plaintiff with this RFC. R. 470–71. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 15, 2013, her alleged disability onset date, through the date of the decision. R. 471.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings.[4] *Plaintiff's Moving Brief,* ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No.

---

[4] At the outset of her brief, Plaintiff asks that the action be reversed with an order directing benefits or, in the alternative, remanded for further proceedings. *Plaintiff's Moving Brief*, ECF No. 12, pp. 5–6. However, at the end of her brief, she argues only that the case should be remanded to correct deficiencies. *Id*. at 24–25 ("In view of the above, the RFC remains speculative, ambiguous, undefended and unreviewable. This matter must be reversed and remanded a second time to correct these deficiencies.").

14.

## IV.    DISCUSSION

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs,
> but never climb ladders, ropes and scaffolds. She can occasionally balance, stoop,
> kneel, crouch and crawl. She can frequently handle, finger and feel with the hands.
> She must avoid concentrated exposure to extreme cold or heat, wetness, humidity,
> fumes, odors, dusts, gases and poor ventilation. She must avoid all exposure to
> hazards such as machinery and heights. The claimant can understand, remember
> and carry out simple instructions. With regard to essential functions of the job, she
> can have occasional interaction with supervisors, coworkers and the public.

R. 464. Plaintiff argues that substantial evidence does not support this determination. *Plaintiff's*

*Moving Brief*, ECF No. 12. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R.

§§  404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is

charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c),

416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir.

2011) ("The ALJ—not treating or examining physicians or State agency consultants—must

make the ultimate disability and RFC determinations.") (citations omitted). When determining a

claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d

422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations.

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d

607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a

limitation [that] is supported by medical evidence, but is opposed by other evidence in the

record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for

an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation

that is not supported by any medical evidence if the ALJ finds the impairment otherwise

credible").

In finding that Plaintiff had the RFC for a limited range of light work, the ALJ detailed

years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*,

Plaintiff's 2023 hearing testimony that she cleans her room, spends her morning watching

television, and drives (but does not have a car). R. 466. As to her musculoskeletal and/or

neurological impairments, the ALJ specifically considered Plaintiff's primarily unremarkable

examination findings:

> As for the claimant's statements about the intensity, persistence, and limiting
> effects of her symptoms, they are inconsistent because the medical and other
> evidence of record does not support a finding of disabling limitations (see 20 CFR
> 404.1505(a) and 416.905(a)) since the alleged onset date of January 15, 2013,
> and/or application date of September 14, 2016, through the date of this decision. In
> remanding this case, the District Court indicated the need for a "clarification of
> findings as to exertional limitations, and for a reassessment of the disabling effect,
> or not, of the claimant's impairments in combination" (10A/12). As to
> musculoskeletal and/or neurological impairments, i.e., lumbar radiculopathy and
> bilateral CTS, on primary care follow-up for lab results on August 17, 2016 (see
> 3F/1), physical examination was unremarkable, including no evidence of bony
> tenderness, joint effusion, enlargement or abnormal motion, and no muscle
> fasciculations, atrophy, muscle weakness, asymmetry or reduced range of motion
> (ROM) noted (3F/3). On internal medicine CE of November 17, 2016, the claimant
> stated that she was diagnosed with CTS in both hands in 2005 and has tingling and
> numbness in both hands, but has not seen a doctor for the condition recently. She
> noted taking Naproxen, which decreases the pain a little, and she has no problems
> gripping things (4F/1). On examination, Dr. Ahmed noted 4/5 power in all muscle
> groups, including grip and pinch strength, and musculoskeletal exam was WNL
> (3F/2). On December 12, 2016, Dr. Salerno noted no significant abnormalities on
> physical examination (see 5F/3-4), but on February 13, 2017, noted evidence of
> lumbar spinal tenderness. The claimant was continued on her current medication
> regimen, including Naproxen (6F/4). On follow-up of May 17, 2017, the claimant
> endorsed "10/10" pain in both shoulders, but stated that the condition improves
> with medication, i.e., Naproxen (9F/1). On December 7, 2017, the claimant was
> evaluated for CTS, reporting cramps, neck pain, and numbness and tingling of the
> affected limb(s). She indicated that she would like to discontinue Naproxen due to
> gastritis symptoms (10F/2). Examination revealed bilateral joint pain in the wrists

(10F/3), as well as restricted ROM in both wrists, positive Phalen's and Tinel's signs, and tenderness noted to palpation. She was referred to a neurologist, Dr. Nilay Shah (10F/5). The claimant was also diagnosed with lumbar radiculopathy (10F/4), though examination at this visit indicated no dysfunction regarding the claimant's spine or lower extremities (see 10F/5; see also 9A/10).

*Id*. The ALJ also noted that Plaintiff had reported that asthma attacks occurred once or twice per week, but that she "is normal in between attacks and her activities are not limited by asthma, but has difficulty in running and going for long walks, and uses albuterol daily"; Plaintiff had denied any recent ER visits or hospital admissions due to asthma; an examination in November 2016 had revealed lungs that were clear to auscultation bilaterally with no rhonchi or wheezes and that she had been assessed with mild and persistent bronchial asthma; in December 2016, Plaintiff, a smoker, had been diagnosed with mild intermittent asthma and counseled as to smoking cessation. R. 466–67. Although Plaintiff had undergone bariatric surgery in December 2022 and had lost 30 pounds, the ALJ nevertheless considered Plaintiff's obesity prior to surgery and its effect—separately and in combination with other impairments—on her functional abilities when crafting the physical RFC:

> SSR 19-2 notes that obesity if often associated with disorders of the musculoskeletal, respiratory and other body systems, and can contribute to limitation of exertional and nonexertional (e.g., postural) functions. SSR 19-2p also acknowledges that the combined effects of obesity with other impairments might be greater than would be expected without obesity. Considering the claimant's other diagnoses of lumbar radiculopathy and asthma, obesity is recognized as an additional "severe" MDI that further supports limiting the claimant to light exertional work and occasional postural functions except never climbing ladders, ropes or scaffolds. Additionally, the claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation due to asthma, and she can frequently handle, finger and feel with the hands due to bilateral CTS. She also must avoid all exposure to hazards such as machinery and heights due to her combination of impairments, as well as any medication side effects, e.g., drowsiness.

R. 467.

11

The ALJ also considered years of record evidence regarding Plaintiff's mental impairments, including, *inter alia*, a psychological consultative examination conducted in November 2016, reflecting, among other things, Plaintiff's report that her treatment (she was under the care of a private psychiatrist who prescribed medication and provided biweekly individual therapy sessions) was somewhat helpful; the findings of a consultative mental status examiner that Plaintiff was pleasant and cooperative with age appropriate social skills who maintained consistent eye contact, that Plaintiff's affect was constricted and that she gave the impression of being depressed, that she was easily able to comprehend all of the examiner's questions and expressed herself in full sentences with clear articulation and fluidity, that despite Plaintiff reported  history of auditory hallucinations, three past suicide attempts, and occasional thoughts of suicide, she displayed logical, coherent and goal directed thought processes with no abnormal thought content or serious observed psychopathology, that Plaintiff was oriented in the typical four spheres and was able to repeat 3/3 words immediately as well as 3/3 words after a 5-minute delay and that she demonstrated an adequate fund of general knowledge, that although she was unable to complete a simple in-the-head arithmetic task she was able to repeat digit strings of up to 5 digits forward and 3 digits backward, that she declined to attempt the serial 7s task and was unable to spell the word "world" either forward or backward, but that she otherwise displayed adequate insight; the consultative examiner's diagnosis of major depressive disorder and panic disorder with agoraphobia. R. 467–68. In December 2016, Plaintiff's anxiety and chronic depression were noted as controlled with psychiatric medications; in October 2017, Plaintiff reported that she was having anxiety attacks and poor sleep, and that her medications were not helping, but in November and December 2017 she reported that the medications were, in fact, helping, that she was feeling better, and that she experienced no side effects; Plaintiff's

June 2018 report that her medication (Klonopin) relieved her anxiety, but "it was contradictorily noted that her condition was 'progressively deteriorating,' with the recent death of her son noted as a likely aggravating or precipitating factor"; Plaintiff's September 2018 report that she was feeling overwhelmed with an increase in isolated behavior and five panic attacks in three months, which coincided with the death of her son and the fact that she had not been medicated for the prior three months; Plaintiff's report during a psychiatric evaluation later that month that she had experienced panic attacks and that medication was not helping, but her mental status exam revealed full range of mood/affect, goal directed thought form/process, intact concentration, good memory, fair insight, and good judgment and impulse control; Plaintiff's report of hallucinations, but no suicidal or homicidal ideation; the July 2019 notation that Plaintiff's anxiety and depression were stable and that she was being followed by psychiatry and was compliant with her medications; treatment notes in April, July, September, and December 2022 that reflected that Plaintiff had depression and trouble sleeping, but that she was otherwise doing well and was much improved with therapy and medication and that hallucinations and suicidal/homicidal ideation were absent on mental status exams. R. 467–68. The ALJ went on to explain Plaintiff's functional restrictions in light of the limitations flowing from her impairments:

> Based on the overall record, the claimant has severe mental MDIs of MDD and panic disorder with agoraphobia, resulting in "moderate" limitations in mental functioning but only a "mild" limitation in understanding, remembering or applying information. Accordingly, she is limited to understanding, remembering and carrying out simple instructions, i.e., "unskilled" work, and having occasional interaction with supervisors, coworkers and the public. While she has had ongoing symptoms of depression and anxiety/panic, the evidence indicates that her condition improved with medication and therapy, and her psychiatric condition has been stable.

R. 468.

> In sum, the above residual functional capacity assessment is supported by the objective medical and other evidence discussed herein. Due to her physical

impairments, particularly lumbar radiculopathy, asthma, obesity and bilateral CTS, the claimant is limited to light work, with postural, manipulative and environmental limitations as articulated herein. She is also limited to understanding, remembering and carrying out simple instructions and having occasional interaction with supervisors, coworkers and the public due [to] her mental impairments. In conjunction with the vocational considerations discussed below, these limitations have not been disabling during the period(s) at issue.

R. 470. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554. Plaintiff

nevertheless challenges the ALJ's RFC determination. *Plaintiff's Moving Brief*, ECF No. 12, pp.

13–24.

Turning first to Plaintiff's arguments based on her physical impairments, Plaintiff

complains that the ALJ neither defined light work nor explained what evidence supports

Plaintiff's ability to perform that work. *Id*. at 14–16. Plaintiff specifically argues that the ALJ did

not provide a function-by-function analysis, failing to explain how long Plaintiff can sit,

stand/walk, and lift/carry in an eight-hour day. *Id*. at 16–18. Plaintiff's arguments are not well

taken.

Although an ALJ's RFC assessment "must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis[,]" SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996), an ALJ is not required "to use

particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the

ALJ's decision must contain "sufficient development of the record and explanation of findings to

permit meaningful review."  *Jones*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec*.,

No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-

by-function assessment based on all of the relevant evidence of an individual's ability to do

work-related activities, but an ALJ does not need to use particular language or adhere to a

particular format in conducting his RFC analysis.") (citations omitted). In this case, the ALJ detailed the record evidence in a narrative discussion, considered Plaintiff's exertional and non-exertional functional limitations flowing from her impairments, and crafted an RFC that reflected those limitations. R. 461–70. Notably, the ALJ's discussion, detailed above, reflects that, in finding that Plaintiff could perform a range of "light work", the ALJ implicitly concluded that Plaintiff could meet the exertional demands of that level of exertion, as defined by the Commissioner's regulations, *i.e.*, she could stand/walk for up to six hours in an eight-hour workday, could sit intermittently during the remaining time, and could lift no more than 20 pounds at a time and could frequently lift/carry up to 10 pounds. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). *See also Maria A. v. Comm'r of Soc. Sec.*, No. CV 21-19431, 2025 WL 88349, at *18 (D.N.J. Jan. 13, 2025) ("[T]he ALJ's discussion detailed above reflects that, when explaining why Plaintiff was capable of performing light work, the ALJ implicitly concluded, consistent with the elements of the "light work" exertional level, that Plaintiff could stand/walk for approximately six hours in an eight-hour workday and could lift no more than 20 pounds at a time and could only frequently lift or carry objects weighing up to 10 pounds."); *Anthony P. v. Comm'r of Soc. Sec.*, No. CV 22-4181, 2024 WL 772583, at *7 (D.N.J. Feb. 26, 2024) (same). Moreover, and based on this record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021). ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to

15

his RFC determination."); *Jones*, 364 F.3d at 505; *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases).

Plaintiff next complains that the ALJ concluded, without any articulated rationale or evidentiary bridge, that Plaintiff could frequently perform fine and gross manipulation despite her severe bilateral CTS. *Plaintiff's Moving Brief*, ECF No. 12, pp. 19–21. The ALJ's failure to explain this finding was not harmless, according to Plaintiff, because the vocational expert testified at the 2023 hearing that a limitation to occasional handling, fingering, and feeling would eliminate the three light exertional jobs (price marker, router, and mail clerk) identified by that expert. *Id.* (citing R. 505). The Court is not persuaded that this issue requires remand. As set forth above, the ALJ expressly considered Plaintiff's severe bilateral CTS, including unremarkable physical examinations that revealed, *inter alia*, no evidence of bony tenderness, joint effusion, enlargement or abnormal motion, muscle fasciculations, atrophy, or asymmetry and 4/5 grip and pinch strength with no trouble gripping things. R. 466. The ALJ also noted a physical examination that reflected some bilateral joint pain in the wrists, tenderness, and restricted range of motion in the wrists. *Id.* In light of this evidence, the ALJ reasonably crafted an RFC that specifically considered Plaintiff's limitations flowing from her CTS and provided for, *inter alia*, light exertional work and frequent—as opposed to constant—fingering and handling. R. 464; *see also* R. 467 ("[S]he can frequently handle, finger and feel with the hands due to bilateral CTS."), 470 ("Due to her physical impairments, particularly lumbar radiculopathy, asthma, obesity and bilateral CTS, the claimant is limited to light work, with

16

postural, manipulative and environmental limitations as articulated herein."). The fact that

Plaintiff may have continued to feel pain when using her wrists/hands for frequent fine and gross

manipulation does not require a finding of disability. *Cf. Welch v. Heckler*, 808 F.2d 264, 270

(3d Cir. 1986) ("[W]hile Welch's pain may be constant and uncomfortable, it is not disabling or

severe."). Moreover, it is the ALJ—not a physician or this Court—who is charged with making

the ultimate disability and RFC determinations and, if necessary, resolving conflicts. *See*

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359, 361–62 (3d Cir. 2011); *Hatton v. Comm'r*

*of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not

uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve

that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Moreover, the ALJ's

consideration and discussion of the evidence was sufficient to allow for meaningful review by

this Court. *See id.*; *see also Cosme*, 845 F. App'x at 134.

Plaintiff goes on to complain that substantial evidence does not support the mental RFC

because the ALJ failed to accommodate Plaintiff's moderate limitations in three areas of

functioning. *Plaintiff's Moving Brief*, ECF No. 12, pp. 21–24. Specifically, Plaintiff contends

that, although the ALJ found moderate limitations in these areas, he "never translated or referred

again" to them in the RFC. *Id.* (citing *Ingandela v. Comm'r of Soc. Sec.*, No. 20-833, 2022 WL

15422 (D.N.J. Jan. 18, 2022)). According to Plaintiff, this failure is harmful error in light of the

vocational expert's testimony that being off task 10% of the workday or requiring 10-15-minute

unscheduled breaks would preclude the jobs identified at step five. *Id.* at 24.

Plaintiff's argument is not well taken. At step three, the ALJ found that Plaintiff had

moderate limitations in three functional areas—*i.e.,* interacting with others; concentrating,

persisting or maintaining pace; and adapting or managing oneself—and only a mild limitation in

her ability to understand, remember or apply information. R. 462–63. At step four, the ALJ

limited Plaintiff to jobs that would require her to, *inter alia*, "understand, remember and carry

out simple instructions." R. 464; *see also* R. 468 ("[S]he is limited to understanding,

remembering and carrying out simple instructions, i.e., 'unskilled work[.]'"); *Hess v. Comm'r*

*Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (equating limitations regarding the completion of

"tasks" to those regarding following "instructions"). The United States Court of Appeals for the

Third Circuit has found that a limitation to simple tasks appropriately accommodates moderate

limitations so long as the ALJ offers a "valid explanation." *Hess*, 931 F.3d at 211. In the present

case, the ALJ's decision offers such an explanation. In fashioning the RFC, the ALJ expressly

relied upon, *inter alia*, the consultative examiner's observations that Plaintiff was easily able to

comprehend all of the examiner's questions, expressed herself in full sentences with clear

articulation and fluidity, displayed logical, coherent and goal directed thought processes with no

abnormal thought content or serious psychopathology; that she was oriented in the typical four

spheres and was able to repeat 3/3 words immediately as well as 3/3 words after a 5-minute

delay and demonstrated an adequate fund of general knowledge; that she could repeat 5 digits

forward and 3 digits backward; that her psychiatric medication was helping; that her more severe

symptoms were associated with the death of her son and while she was not taking her

medication; and that, despite ongoing symptoms of depression and anxiety/panic, her psychiatric

condition was stable. R. 467–68; *see also Hess*, 931 F.3d at 214 (finding that ALJ's explanation

was sufficient where the ALJ "highlighted, among other things, the following: mental status

examinations and reports that revealed that Hess could function effectively; opinion evidence

showing that Hess could do simple work; and Hess's activities of daily living, which

demonstrated that he is capable of engaging in a diverse array of 'simple tasks'"); *Menkes v.*

18

*Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").[5]

Finally, Plaintiff's complaint regarding time off-task and unscheduled breaks is likewise unavailing. As previously discussed, an ALJ must include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554. "'[I]t would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)). Although Plaintiff's counsel posed to the vocational expert an alternative hypothetical question that contained more limitations than did the RFC actually found by the ALJ, that fact is irrelevant because the RFC found by the ALJ is supported by substantial evidence. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984); *Chrupcala*, 829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's physical and mental RFC are consistent with the record evidence and enjoy substantial support in the record.

---

[5] *Ingandela,* upon which Plaintiff relies, is inapposite because, in "conducting the subsequent RFC analysis, the ALJ made only a 'passing reference to the medical evidence regarding [the plaintiff's] mental health.'" *Ingandela*, 2022 WL 154422, at *13 (quoting *Carratura v. Saul*, No. 20-05483, 2021 WL 4077565, at *6–7 (D.N.J. Sept. 8, 2021))

V.      **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 9, 2026                          *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

20